UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY and
DEERBROOK INSURANCE COMPANY,

                Plaintiffs,

**MEMORANDUM OF
DECISION AND ORDER**

05-5934 (DRH)(MLO)

       -against-

VALLEY PHYSICAL MEDICINE &
REHABILITATION, P.C., ELITE PHYSICAL
MEDICINE & REHABILITATION, P.C.,
UNIVERSAL EXPRESS INC., DR. JOSEPH
MILLS, DR. PAVANI TIPIRNENI, DR.
SAROSH QUERESHY, DR. ERIC ROTH,
and DR. SWAPNIDIP LAHIRI,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**Appearances:**

**McDonnell & Adels, P.C.**
Attorneys for Plaintiffs
401 Franklin Avenue
Garden City, NY 11530
By: Martha S. Henley, Esq.

**Short & Billy, P.C.**
Attorneys for Plaintiffs
217 Broadway, Suite 300
New York, NY 10007
By: Skip Short, Esq.

**Friedman, Harfenist, Langer & Kraut**
Attorneys for Defendants Valley Physical
Medicine & Rehabilitation, P.C., Elite
Physical Medicine & Rehabilitation, P.C.,
Universal Express, Inc., Dr. Joseph Mills
and Dr. Pavani Tipirneni
300 Marcus Avenue, Suite 2E1
Lake Success, NY 11042
By: Steven J. Harfenist, Esq.

**HURLEY, Senior District Judge:**

Presently before the Court are two motions: a motion to dismiss the complaint and a

motion for Rule 11 sanctions. Both motions are brought by defendants Valley Physical Medicine

& Rehabilitation, P.C. ("Valley"), Elite Physical Medicine & Rehabilitation, P.C. ("Elite"),

Universal Express, Inc. ("Universal"), Dr. Joseph Mills ("Mills") and Dr. Pavani Tipirneni

("Tipirneni") (collectively "Defendants").[1] For the reasons set forth below, the motion to dismiss

is GRANTED in part and DENIED in part. The motion for Rule 11 sanctions is DENIED.

## *Background*

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Deerbrook

Insurance Company (collectively "Allstate"or "Plaintiffs") commenced this action on December

20, 2005 asserting causes of action for fraud (first claim for relief), for violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO") (second through seventh claims

for relief), unjust enrichment/restitution (eighth claim for relief) and a declaratory judgment

(ninth claim for relief). Allstate's claims arise out of payments it made from 1996 to 2002

---

[1] Plaintiffs voluntarily dismissed the complaint as against Dr. Eric Roth. Drs. Quereshy
and Lahiri have not yet appeared in the action.

totaling in excess of one million dollars to Valley and Elite for services allegedly rendered to Allstate's insureds under New York State's no-fault insurance system. (Compl. ¶¶ 58 & 66.) Allstate seeks damages and, in its ninth cause of action, a declaratory judgment that Valley and Elite are fraudulently incorporated enterprises and, therefore, barred from receiving payment for no-fault claims (Compl. ¶¶ 95-101).

In New York, only doctors of medicine and of osteopathy are physicians and are authorized to practice medicine. *See* N.Y. Educ. Law §§ 6522, 6524. New York law also prohibits non-physicians from sharing ownership in medical service corporations. *See* N.Y. Bus. Corp. Law §§ 1507, 1508, and N.Y. Educ. Law § 6507(4)(c). As alleged in the complaint, the Defendants engaged in a scheme to evade the State's prohibition on non-physicians from sharing ownership in medical service corporations in order to facilitate fraudulent no-fault billing. (Compl. ¶¶ 7- 45.) Mills, a chiropractor, paid Drs. Tipirneni, Quereshy, and Lahiri to use their names on paperwork filed with the State to establish medical service corporations, to wit: Valley and then Elite.[2] (Compl. ¶¶ 7, 31-32.) Once Valley and Elite were established under the facially valid cover of the nominal physician owners, Mills actually operated the companies. (Compl. ¶¶ 11, 25.) To maintain the appearance that physicians owned Valley and Elite, Mills caused Valley and Elite to hire Universal, a company owned by him, as a management company, which billed Valley and Elite at inflated rates so that the actual profits did not go to the physicians, but were channeled to Mills as owner of Universal. (Compl. ¶¶ 11, 12, 35.)

---

[2] According to the complaint, when Allstate and other insurers refused to pay Valley's bills, Mills formed Elite in June 2001, and Elite continued to operate the scheme at the same location as Valley. (Compl. ¶ 14.)

Enabled by the doctor defendants, Valley, Elite, Universal, and Mills proceeded to bill Allstate for medical services that were not provided by medical doctors, for medically unnecessary and/or medically useless services, and engaged in other fraudulent billing. (Compl. ¶¶ 12-14, 31-36.)

The instant action is neither the first nor the only action between these parties. In 1999, Valley, as assignee of 10 patients allegedly entitled to no-fault benefits, commenced an action against Allstate in this Court alleging it was entitled to payment of its bills because Allstate failed to pay the bills within 30 days of submission as mandated by the statutes and regulations governing no-fault. *See Valley Physical Med. and Rehab. v. Allstate Ins. Co.,* 99 CV 5657 (E.D.N.Y.) (the "1999 Action"); Ex. A, attached to Declaration of Martha S. Henley ("Henley Decl."). Allstate defended the action by raising affirmative defenses, including that Valley was not properly licensed and incorporated and was, therefore, not entitled to receive no-fault benefits, and that the bills were for medically unwarranted testing and/or treatment. Allstate did not, however, assert any counterclaims. *See* Ex. C, attached to Declaration of Steven J. Harfenist ("Harfenist Decl."). At trial and during its direct case, Valley voluntarily withdrew the action with prejudice. *See* Ex. F, attached to Henley Decl.

At the time the instant motion was filed, there were approximately ten actions pending in Nassau County District Court between the parties. In each of these cases, Valley is suing Allstate to recover for no-fault bills it submitted to Allstate that were not paid. *See* Exs. F & G, attached to Harfenist Decl. The issue of Valley's corporate structure has been raised by Allstate as a defense in each of these actions. Harfenist Decl. at ¶ 3 & Ex. G.

In this action, Defendants have moved to dismiss the complaint. Defendants argue that 1) the RICO causes of action are barred by the statute of limitations; 2) the causes of action for fraud and for unjust enrichment to recover those benefits paid prior to April 4, 2002 are barred under *State Farm Automobile Insurance Company v. Mallela,* 4 N.Y.3d 313, 794 N.Y.S.2d 700 (2005); 3) the cause of action for fraud is not plead with particularity, is precluded under New York's no-fault law, and fails as a matter of law for lack of reasonable reliance; and 4) this Court should abstain from determining Allstate's claim for declaratory relief because of the pendency of state cases involving the issue of Valley's corporate status.

### Discussion

## I. Standard for a Motion to Dismiss

The Court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *King v. Simpson¸* 189 F.3d 284, 286 (2d Cir. 1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). The complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, "a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.,* 445 F.3d 586, 591 (2d Cir. 2006). Nonetheless, "a plaintiff's allegations, accepted as true, must be sufficient to establish liability." *Amron v. Morgan Stanley Inv. Advisors Inc.,* 464 F.3d 338, 344 (2d Cir. 2006).

In construing a complaint on a Rule 12(b)(6) motion, the Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the

plaintiff. *King*, 189 F.3d at 287; *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## II. Overview of New York's No-Fault Insurance System

Inasmuch as this case revolves around New York State's no-fault automobile insurance system, a brief overview of that system is in order.

In 1973, the New York State Legislature enacted the Comprehensive Automobile Insurance Reparations Act (the "Act"). S*ee* N.Y. Ins. Law §§ 5101 *et seq.* (formerly N.Y. Ins. Law §§ 670 *et seq.*). The Act instituted a system of no-fault insurance that supplanted common-law tort actions for most victims of automobile accidents. *Medical Soc'y v. Serio,* 100 N.Y.2d 854, 860, 768 N.Y.S.2d 423 (2003). "The primary aims of this new system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists." *Id.*

Under New York's no-fault system, the insured party is permitted to recover from insurers for "basic economic loss," including medical expenses, that arise out of the use or operation of an insured vehicle. N.Y. Ins. Law § 5102. Medical expenses are reimbursed based upon a fee schedule which specifies the charges permitted for specific services rendered by particular kinds of providers. *Id.* at § 5108; 11 N.Y.C.R.R. § 65-3.16. A "provider of health care

6

services" is not eligible for reimbursement "if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such services in New York or meet any applicable licensing requirement necessary to perform such services in any other state in which such service is performed." *Id.* at § 65-3.16(a)(12).

The regulations implementing the Insurance Law allow covered parties to assign their benefits to health care providers. The health care providers then submit the claims to the insurers for reimbursement for treatment and services given to the injured party. *See* 11 N.Y.C.R.R. § 65-3.11. The regulations establish strict and short time periods for claim submission and processing. *See generally Medical Soc'y,* 100 N.Y.2d at 860-63. Under the regulations, an insurer must request any necessary verification of claims by sending the claimant certain prescribed forms within ten days of receiving a completed claim. 11 N.Y.C.R.R. § 65-3.5(a). Upon receipt of verification, the insurer has thirty days to pay or deny a benefits claim. *Id.* at § 65-3.8; *see also Presbyterian Hosp. v. Maryland Cas. Co.,* 90 N.Y.2d 274, 278, 660 N.Y.S.2d 536 (1997).[3] If benefits are not paid within the thirty-day requirement, they become overdue and overdue payments bear interest of 2% per month. 11 N.Y.C.R.R. § 65-3.9(a). A claimant is entitled to attorneys' fees for valid claims that are denied or overdue. *Id.* at §65-3.10(a).

### III. The Claims for Fraud and Unjust Enrichment

With that background in mind, the Court turns to Plaintiffs' causes of action for fraud and unjust enrichment. Defendants move to dismiss these causes of action to the extent the claims seek reimbursement for no-fault benefits paid prior to April 4, 2002, relying on the New York

---

[3]The regulations contain other timing and notifications requirements applicable in certain situations not relevant here. *See generally Presbyterian Hosp.*, 90 N.Y.2d at 278-79.

Court of Appeals decision in *State Farm Mutual Automobile Insurance Company v. Mallela*, 4 N.Y.3d 313, 794 N.Y.S.2d 700 (2005). In addition, they argue that the fraud claims predicated on lack of medical necessity and nature of the services must be dismissed because Allstate failed to allege fraud with particularity, there is no reasonable reliance, Allstate is precluded from raising fraud because it failed to raise it in the denial of benefits, and any claims for fraud through December 20, 1999, are barred by the statute of limitations.

**A. Ascertaining State Law**

Allstate's fraud and unjust enrichment claims are governed by New York law. In ascertaining the law of New York, this Court "looks to the decisional law of [New York] as well as to the state's constitution and statutes." *Travelers Ins. Co. v. 633 Third Assoc.,* 14 F.3d 114, 119 (2d Cir. 1994). Where the state law is ambiguous or uncertain or there is an absence of authoritative law from the state's highest court, "the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Phansalkar v. Andersen Weinroth & Co.,* 344 F.3d 184, 199 (2d Cir. 2003) (quoting *Travelers*, 14 F.3d at 119); *accord DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005). In doing so, the federal court "must give 'fullest weight' to the decisions of a state's highest court and 'proper regard' to the decisions of a state's lower courts." *Phansalkar*, 344 F.3d at 199 (quoting *Travelers*, 14 F.3d at 119). Decisions of a state's intermediate and lower courts are not binding on the federal courts. "[W]e consider the language of the state courts to be helpful indicators of how the state's highest court would rule. Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for ascertaining state law

which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella,* 403 F.3d at 112 (internal quotations and citations omitted).

**B.  The New York Court of Appeals' Decision in *Mallela***

In *Mallela*, the New York Court of Appeals accepted the following certified question from the Second Circuit: "whether a medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508 and N.Y. Education Law § 6507(4)(c) is entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 *et seq.* and its implementing regulations, for medical services rendered by licensed medical practitioners." 4 N.Y.3d at 320.   The Court of Appeals concluded that such corporations are not entitled to reimbursement.  *Id.*  The Court based its ruling on the Superintendent of Insurance's revised regulation, 11 N.Y.C.R.R. § 65-3.16(a)(12), which allows carriers to withhold reimbursement from fraudulently licensed medical corporations.  It found the revised regulation valid and held that "on the strength of this regulation, carriers may look beyond the face of licensing documents to identify willful and material failure to abide by state and local law."  4 N.Y.3d at 321.

The Court went on to address whether, if the fraudulent corporations were not entitled to reimbursement, a carrier could recover money already paid out under theories of fraud or unjust enrichment.  The New York Court of Appeals stated that, because its holding rested on the Superintendent's revised regulation declaring fraudulently licensed corporations ineligible for no-fault reimbursement, "no cause of action for fraud or unjust enrichment would lie for any payment made by the carriers before that regulation's effective date of April 4, 2002."  *Id.*  at

322.  As the Court could not determine from the complaint whether or not any payments were made after the revised regulation took effect, it declined to consider whether the subject carrier had alleged sufficient facts to support causes of action for fraud or unjust enrichment.  *Id.*

Based on the New York Court of Appeals decision in *Mallela,* Defendants argue that Allstate's claims for payments made from 1996 through 2001 must be dismissed.  Moreover, as to the payments made in 2002 (which total $30, 372.01), only those made after April 4, 2002 survive under *Mallela*.  Plaintiffs counter that *Mallela* does not bar their claims because they do not rely solely on the fraud in licensure, but also allege the Defendants' improper licensure and incorporation were used to facilitate billing fraud, a claim not made in *Mallela*.  Plaintiffs argue that *Mallela* held only that no claim for fraud and unjust enrichment lies *upon the amended regulation* prior to its effective date.  According to Plaintiffs, *Mallela* did not answer the question whether fraudulent corporations were entitled to reimbursement under the prior law.

## C.  Recovery for payments made prior to April 4, 2002, on the theories of fraud and unjust enrichment claims based on fraudulent licensure

Notwithstanding Plaintiffs' argument to the contrary, this Court does read *Mallela* as precluding Plaintiffs' causes of action for fraud and unjust enrichment to recover payments made prior to the effective date of the revised regulation and arising from Defendants' allegedly fraudulent incorporation.  The *Mallela* Court held that no cause of action for fraud or unjust enrichment would lie for payments made to fraudulently incorporated providers before the revised regulations went into effect.  By disallowing such claims for payments made before April 4, 2002, the *Mallela* Court recognized that the law as it existed prior to that date did not

recognize claims to recoup payments from entities because they lacked a required license.

Under the common law of New York, compensation has been denied to unlicensed providers of services for which a regulatory license is required. *See Metroscan Imaging, P.C. v. Geico Ins. Co.*, 13 Misc. 3d 35, 38-39, 823 N.Y.S.2d 818, 821 (App. Term, 2d & 11th Jud. Dist. 2006) (citing *Spivak v. Sachs*, 16 N.Y.2d 163, 263 N.Y.S.2d 953 (1965); *Bendell v. De Dominicis*, 251 N.Y. 305 (1929); *Mavco Realty Corp. v. M. Slayton Real Estate, Inc.,* 12 A.D. 3d 575, 786 N.Y.S.2d 63 (2004); *Price v. Close*, 302 A.D. 374, 754 N.Y.S.2d 660 (2003); *Gordon v. Adenbaum*, 171 A.D.2d 841, 567 N.Y.S.2d 777 (1991); *P.C. Chipouras & Assoc. v. 21 Realty Corp.*, 156 A.D.2d 549, 549 N.Y.S.2d 555 (1989); *Unger v. Travel Arrangements*, 25 A.D.2d 40, 266 N.Y.S.2d 715 (1966)). The New York Courts have distinguished between denying an unlicensed entity compensation and permitting the recovery of a fee after it has been paid. The lack of a license does not permit the recovery of a fee from the unlicensed provider *after* it has been paid. *Metroscan,* 823 N.Y.S.2d at 821 (citing *Johnston v. Dahlgren,* 166 NY 354 (1901); *Goldman v. Garofalo,* 71 A.D.2d 650 (1979)).

In a well-reasoned decision with which this Court agrees, the Appellate Term has read *Mallela* as holding that the revised regulation "altered the common law *prospectively* such that an insurance carrier may maintain a cause of action against a fraudulently incorporated medical service corporation to recover assigned first-party no-fault benefits which were paid by the insurer to such medical service corporation after the regulation's effective date." *Metroscan,* 823 N.Y.S.2d at 821-22 (emphasis added).

Allstate's argument that *Mallela* does not preclude the recovery of no-fault payments made prior to April 2, 2004, has also been rejected by the Appellate Division, First Department.

*See Allstate Ins. Co. v. Belt Parkway Imaging P.C.,* 33 A.D.3d 407 (1st Dept. 2006). In *Belt Parkway*, the First Department upheld the dismissal of Allstate's causes of action for fraud and unjust enrichment to recover for payments made before April 4, 2002 based on the fraudulent licensure of the defendants therein. The *Belt Parkway* Court found *Mallela* dispositive. Further, it rejected Allstate's attempt to distinguish *Mallela* on the ground that its claims rested on the common law, stating such claims are not cognizable under the common law. *Id.* at 408.

Following suit, this Court rejects Allstate's fraud and unjust enrichment causes of action, based on Defendants' alleged fraudulent incorporation and seeking to recover for no-fault payments made to Defendants prior to April 4, 2002. These causes of action fail to state a claim.[4]

**D. Recovery for payments prior to April 4, 2002 based on billing fraud.**

Allstate argues that this case is distinguishable from *Mallela* because, unlike the *Mallela* plaintiff, it is asserting not only fraudulent incorporation but that "the fraudulent incorporation was used to facilitate billing fraud." As discussed below, the addition of fraud claims based on billing fraud does not save all of Allstate's fraud claims for payment made prior to April 4, 2002.

1. **Recovery for payments made before April 4, 2002, on theories of fraud and unjust enrichment based on alleged billing fraud consisting of excessive or unnecessary services or services by unlicensed individuals**

Insurance Law § 5106(a) and 11 N.Y.C.R.R. § 65-3.8 require insurers to pay or deny a

---

[4]The complaint sets forth only the total yearly payments made by Allstate in each year from 1996 to 2002. As the complaint does not specify the exact dates of payment, the Court cannot determine whether any of the 2002 payments were made after April 4, 2002. The parties are directed to the Conclusion of this Memorandum for instructions as to the 2002 payments.

claim within thirty days after the claimant supplies proof of the fact and amount of loss sustained. Under a line of cases commencing with *Presbyterian Hospital in the City of New York v. Maryland Casualty Company,* 90 N.Y.2d 274 (1997), and *Central General Hospital v. Chubb Group of Insurance Companies,* 90 N.Y.2d 195 (1997), the New York Court of Appeals has held that the failure of an insurer to comply with the thirty-day rule will result in the insurer being precluded from raising any defense to a claim for payment, other than defenses premised on lack of coverage.

For example, preclusion was applied in *Presbyterian Hospital* to prevent an insurer from asserting intoxication of the insured as a defense to a suit for payment where the insurer failed to deny the claim within thirty days of receipt or properly extend the time frame by properly requesting verification within ten days of the receipt of the claim. *Presbyterian Hosp.,* 90 N.Y.2d at 281. In contrast, the Court in *Central General* held that an insurer's defense based on the assertion that its insured's condition and hospitalization were unrelated to the accident was not subject to preclusion despite the insurer's failure to deny the claim within thirty days. The defense was premised on a lack of coverage and therefore not subject to preclusion. *Cent. Gen'l,* 90 N.Y.2d at 199. The *Central General* Court distinguished the insurer's defense that the insured's condition was unrelated to the accident from the insured's defense that the hospital treatments were medically excessive. The Court indicated that a defense of excessive medical treatment is not ordinarily related to coverage and "failure to comply with the Insurance Law time restrictions might properly preclude the insurer from a belated rejection of the billing claim on that basis." *Id.*

In sum, the Court of Appeals has held that where the defense relates to coverage – such as that the services rendered did not arise from a covered accident – the failure to issue a timely disclaimer will not preclude the defense. However, where the defense implicates the degree of treatment – such as whether an eligible injured person needs five rather than ten treatments – the absence of a timely disclaimer will result in preclusion.

Applying *Presbyterian Hospital* and *Central General*, the New York lower courts have held that claims of fraud based upon fraudulent incorporation or staged accidents are not subject to preclusion. *See, e.g., Metro Med. Diagnostics, P.C. v. Eagle Ins. Co.,* 293 A.D.2d 751 (2d Dept. 2002); *Midborough Acupuncture P.C. v. State Farm Ins. Co.,* 13 Misc. 3d 58, 823 N.Y.S.2d 822 (App. Term, 2d & 11th Jud. Dist. 2006); *A.B. Med. Serv. PLLC v. Utica Mut. Ins. Co.,* 11 Misc. 3d 71, 73, 813 N.Y.S.2d 845 (App. Term, 2d & 11th Jud. Dist 2006); *Montgomery Med. v. State Farm Ins.,* 12 Misc. 3d 1169A, 820 N.Y.S.2d 844, 2006 N.Y. Misc. LEXIS 1474 at *5 (Dist. Ct. Nass. Co. 2006); *SK Med. Services, P.C. v. N.Y. Cent. Mut. Fire Ins. Co.*, 11 Misc. 3d 1086A, 819 N.Y.S.2d 852 (Civ. Ct. Richmond County 2006).

The lower New York courts have also held that claims of fraud based on schemes to bill for unnecessary or excessive services, the use of improper billing codes or services by unlicensed individuals must be asserted in a timely denial or they are precluded. *See, e.g., Valley Psych. P.C. v. Liberty Mut. Ins. Co.,* 30 A.D.3d 718 (3d Dept. 2006) (billing for unlicensed individuals subject to preclusion); *LMK Psych. Serv. P.C. v. Liberty Mut. Ins. Co.,* 30 A.D.3d 727 (3d Dept. 2006) (claim that billing misrepresented as treating doctor, a doctor who did not provide services or supervise the services provided, held subject to preclusion); *Bonetti v. Integon Nat. Ins. Co.,* 269 A.D.2d 413 (2d Dept. 2000) (claim of excessive surgeries subject to preclusion); *Mount*

*Sinai Hosp. v. Triboro Coach Inc.,* 263 A.D.2d 11 (2d Dept. 1999) (discussing generally

preclusion of claims for excessive or unnecessary services); *Countrywide Ins. Co. v. Zablozki,*

257 A.D.2d 506 (1st Dept. 1999) (claim that unreasonable and unnecessary tests were performed

subject to preclusion); *Benson Med. P.C. v. Progressive Northeastern Ins. Co.,* 12 Misc. 3d

144A, 824 N.Y.S.2d 760 (App. Term, 2d & 11th Jud. Dist. 2006) (claim asserting fraud through

the use of incorrect billing codes subject to preclusion); *AT Medical P.C. v. Utica Mut. Ins. Co.,*

11 Misc.3d 142A, 819 N.Y.S.2d 846 (App. Term, 2d & 11th Jud. Dist. 2006) (claims of

fraudulent billing and unnecessary and medically inappropriate treatment subject to preclusion)*;*

*MGM Psych. Care P.C. v. Utica Mut. Ins. Co.,* 12 Misc. 3d 137A, 824 N.Y.S.2d 763 (App.

Term, 2d & 11th Jud. Dist 2006) (claims of fraudulent billing and excessive medical treatment

subject to preclusion);   *Careplus Med. Supply Inc. v. State-Wide Ins. Co.,* 11 Misc. 3d 29, 812

N.Y.S.2d 736 (App. Term, 2d & 11th Jud. Dist  2005) (provider fraud in form of fraudulent

billing and excessive medical treatment subject to preclusion); *Tahir v. Progressive Cas. Ins.

Co.,* 12 Misc.3d 657, 814 N.Y.S.2d 507 (Civ. Ct., N.Y. County 2006) (claim of medically

inappropriate treatment subject to preclusion)..

Applying preclusion to untimely defenses of fraud based on excessive billing or

unnecessary services or service provided by unlicensed individuals, seems to this Court to

comply with the reasoning of the New York Court of Appeals in *Central General and

Presbyterian Hospital*.  Moreover, given the uniformity of the lower court decisions and

according them due deference as "helpful indicators of state law," *DiBella*, 103 F.3d at 113, this

Court accepts these decisions as accurately predicting how the New York Court of Appeals

would resolve the uncertainty.

2. **Recovery for payments made before April 4, 2002, on theories of fraud and unjust enrichment based on alleged billing fraud consisting of billing for services never rendered**

There is, however, a type of billing fraud alleged by Allstate that has received little judicial attention - billing for services that have not been provided. (*See* Compl. ¶38.)

This Court has found only one decision that squarely addresses the issue. In *Fair Price Medical Supply Corporation v. Travelers Indemnity Company,* 9 Misc. 3d 76 (App. Term, 2d & 11th Jud. Dist. 2005), the Appellate Term held, over a strong dissent, that an insurer's defense premised on the eligible insured person's statement that he never received the medical supplies for which he was billed is subject to preclusion. The majority reached that conclusion stating: "we see no meaningful distinction between a fraudulent claim for a $25 item of unprovided medical equipment following a covered accident, a fraudulent claim for $500 medical equipment where the item's cost to the provider was $25 . . . and a $500 claim for physical therapy treatment where only $25 of such treatments were medically necessary or, for that matter actually administered." *Id.* at 79.

In contrast, the dissent in *Fair Price* concluded that: "Both the Court of Appeals and common sense dictate that there can be no insurance coverage if there was no accident or no policy covering the car involved. The same must hold true if there was no treatment or medical equipment provided at all." *Id.* at 82. In reaching that conclusion, the dissent interpreted *Presbyterian Hospital* as saying:

> the statute and regulations were written to give the benefit of the doubt to the eligible injured person (and his assignee) in order to avoid protracted dilatory practices that could well be employed by an insurance carrier designed solely to prejudice those making

claims. This is true even if this results in the insurer paying ill-founded, illegitimate and fraudulent claims. By this, I believe the Court of Appeals was addressing the need to avoid protracted time-consuming and prejudicial litigation over whether or not an eligible injured person needed ten (10) treatments instead of five (5) treatments, irrespective of whether the five (5) additional treatments were, in fact, objectively necessary, or overly cautious treatment, or totally unnecessary but honestly prescribed, or [were] knowingly unnecessary and [were] provided for the purpose of receiving additional payment, i.e., fraud.

However, reason dictates that it was not meant to mandate the payment of an intentional false claim for treatment, services or medical equipment that was never provided, i.e., pure fraud (classic fraud).

*Id.* at 80-81. The *Fair Price* dissent also discussed the Court of Appeals decision in *Zappone v.*

*Home Insurance Company,* 55 N.Y.2d 131 (1982):

 [The *Zappone* Court held] that timeliness of denial is not dispositive if the subject automobile is not covered by the policy in question. Similarly . . . if there is no medical equipment provided then there can be no obligation to pay for that medical equipment which was not provided irrespective of any time limit. The Court in *Zappone* found that to hold otherwise was to "rewrite the policy to expose the insurance carrier to a risk never contemplated by the parties and for which the insurance carrier had never been compensated, though the Insurance Law requires that a rate commensurate with the risk assumed be charged without deviation or discrimination."

9 Misc. at 81-82 (quoting *Zappone,* 55 N.Y.2d at 138). Applying the rationale of *Zappone,* the

dissent continued:

I can think of no greater injustice, in the area of civil litigation, than for this Court to direct payment for items that never existed, nor any greater absurdity than for this Court to insist that it is required to do so under the law. It is my firm and unshakeable belief that neither the legislature nor the Insurance Department ever intended for an insurance carrier, or anyone else for that matter, to be forced to pay for medical equipment that was never provided

> and "the statute must be construed consonant with that presumption."

*Id.* at 82 (quoting *Zappone,* 55 N.Y. at 137).

As demonstrated by the majority and dissenting opinions in *Fair Price*, the question is whether billing for services not provided is more analogous to excessiveness or to lack of coverage. Cognizant of the fact that while the decision in *Fair Price* is "helpful," it is not binding on this Court. Having carefully considered the issue, this Court believes that the New York Court of Appeals would hold that billing for services not provided is more akin to lack of coverage and, therefore, not subject to preclusion.

As stated by the New York Court of Appeals in *Medical Society,* the primary aims of New York's no-fault system include ensuring prompt compensation for losses incurred by accident victims without regard to fault and providing substantial premium savings to New York motorists. 100 N.Y.S.2d at 860. If there has been no service provided, then there has been no loss requiring prompt compensation. Moreover, requiring insurers to pay bills for non-existent services would increase the exposure of insurers, thereby contributing to rising premiums. Applying preclusion to fraud based on bills for services (or treatment or equipment) never provided would not serve the purposes of the no-fault system.

Also, in *Central General,* the New York Court of Appeals recognized that some "excusal from payment of some part of no fault benefits" could constitute a kind of lack of coverage. In discussing the assertion that the hospital treatments were medically excessive, the Court wrote: "The latter type of excusal from payment of some part of no fault benefits . . . does not *ordinarily* constitute the kind of lack of coverage classification contemplated or implicated by *Zappone*."

18

90 N.Y.2d at 202 (emphasis added).  Thus, the Court of Appeals left the door open for some excusal-from-payment claims to be considered coverage issues.

For the reasons set forth in the dissenting opinion in *Fair Price*, this Court believes that the New York Court of Appeals would allow billing fraud claims premised on treatment or services or equipment having never been provided despite the insurer's failure to comply with no-fault's time requirements.  Accordingly, this Court holds that fraud claims based on services or treatment or equipment having never been provided are not subject to preclusion.

### 3.  Summary of Ruling on Billing Fraud Claims

Application of the foregoing principles to the present case causes this Court to conclude that Allstate's causes of action for fraud and unjust enrichment for payments made prior to April 4, 2002 must be dismissed to the extent they are premised upon fraudulent billing in the nature of excessive or unnecessary services or for services by unlicensed individuals that were not timely denied.   The complaint fails to allege that Allstate timely denied any of the allegedly fraudulent bills paid prior to April 4, 2002.  Therefore, the addition of fraud claims premised on billing for excessive services, services that were medically unnecessary, or services by unlicensed individuals does not save Allstate's fraud and unjust enrichment claims.  If no-fault insurers are precluded from raising fraudulent billing in the form of unnecessary or excessive services as a defense to non-payment absent a timely denial, then certainly such allegations cannot support an affirmative claim absent a timely denial.  *Cf. Presbyterian Hosp.,* 90 N.Y.2d at 285 (stating no-fault's prompt payment of uncontested first party benefits "is part of the price paid to eliminate common law contested actions").

Accordingly, Allstate's claims for fraud and unjust enrichment based on payments made

to Valley and Elite prior to April 4, 2002, are dismissed except for those billing fraud claims implicating coverage, i.e., billing for services that were never provided.

To the extend that Allstate can plead that it issued timely denials for excessive or unnecessary services or services by unlicensed individuals or can plead other billing fraud claims not subject to preclusion as discussed above, Allstate may amend its complaint and replead its causes of action for fraud and unjust enrichment to recover for payments made prior to April 4, 2002. The parties are directed to the Conclusion of this Memorandum for further instructions on amending the complaint.

## IV. The RICO Claims

"RICO is a broadly worded statute that 'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Attorney General of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S. Rep. No. 91-617, at 76 (1969)). "To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citations and internal quotation marks omitted).

In this case, Plaintiff asserts claims pursuant to §§ 1962(c) and (d). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c). Section 1962(d) provides that "[i]t shall be unlawful for any

person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

"To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco*, 244 F.2d at 306 (citations and internal quotation marks omitted). Briefly, a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) ("For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.") (citation and internal quotation marks omitted). "Racketeering activity" is defined as certain criminal acts under state and federal law including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity" requires "at least two predicate acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" *DeFalco*, 244 F.3d at 321 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

In their motion to dismiss, Defendants do not challenge whether Plaintiffs have adequately pleaded a RICO claim. Rather, Defendants' argue that the RICO claims must be dismissed as barred by the statute of limitations.

Civil RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987). The statute begins to run "when the plaintiff discovers or should have discovered the RICO injury." *Tho Dinh Tran v. Alphonse Hotel Corp.,* 281 F.3d 23, 35 (2d Cir. 2002) (further quotation omitted), *overruled on other grounds by Salyton v. Amer. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006). It is the discovery of the injury, and not of the underlying predicate acts, which triggers the statute of limitations. *Rotella v. Wood,* 528 U.S. 549, 555-57 (2000).

In the Second Circuit there is a separate accrual rule. Under that rule "a new claim accrues and the four-year limitation period begins anew each time a plaintiff discovers or should have discovered a new and independent injury." *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 59 (2d Cir. 1998). " A necessary corollary of the separate accrual rule is that a plaintiff may only recover for injuries discovered or discoverable within four years of the time suit is brought. . . . As long as separate and independent injuries flow from the underlying RICO violations-regardless of when those violations occurred-plaintiff may wait indefinitely to sue, but may then win compensation only for injuries discovered or discoverable within the four-year window before suit was filed, together, of course, with any provable future damages." *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995) (citing *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir. 1988), *cert. denied,* 490 U.S. 1007 (1989)).

"The first step in the statute of limitations analysis is to determine when the [plaintiffs] sustained the alleged injury for which they seek redress." *Merrill Lynch*, 154 F.3d at 59. Here, the complaint is quite specific that the claimed injury is "that payments were made to Valley [and Elite] which would not have otherwise been made but for the fraudulent activities." (Compl. ¶¶

57, 65; *see also id.* at ¶¶ 58, 74, 78(c), 85, 90.) According to the complaint, these payments were made at unspecified dates in the years 1996 through 2002. (*Id.* at ¶¶ 58, 66.) Each payment made constitutes a separate injury sustained on the date the payment was made.

Next, the Court must determine the date(s) when Allstate "discovered or should have discovered that injury." *Bankers Trust,* 859 F.2d at 1103. Even if Plaintiffs' injuries occurred on the date each of the various payments were made, "the limitations period does not begin to run until they have actual or inquiry notice of the injury." *Id.*

Plaintiffs argue that they could not discover an injury until they had knowledge of a legal right that had been violated. According to Plaintiffs, they paid the bills they received from Valley and Elite within thirty days of receipt as they were required to do under no-fault but could not discover they "had suffered a legally cognizable injury until the New York Court of Appeals upheld the revised regulation implementing the no-fault insurance law, which explicitly stated that an improperly licensed provider is barred from collecting no fault benefits." (Mem. in Opp'n to Defs.' Rule 12(b)(6) Mot. to Dismiss ("Plaintiffs' Mem.") at 14.)

Plaintiffs' argument confuses discovery of the injury with discovery of the pattern of racketeering. The federal courts have generally applied a discovery accrual rule when a statute is silent on the issue. *See, e.g., Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 191 (1998). In *Rotello*, the Supreme Court rejected an injury and pattern discovery rule for the start of the RICO limitations period. Therein, the Court noted that its past decisions have consistently rejected attempts to extend the justification for a discovery rule beyond the injury:

> "We are unconvinced that for statute of limitations
> purposes a plaintiff's ignorance of his legal rights and his
> ignorance of the fact of his injury or its cause should receive

> identical treatment.  That he had been injured in fact may be
> unknown or unknowable until the injury manifests itself; and the
> facts about causation may be in control of the putative defendant,
> unavailable to the plaintiff or at the very least difficult to obtain.
> The prospect is not so bleak for a plaintiff in possession of the
> critical facts that he has been hurt and who has inflicted the injury.
> He is no longer at the mercy of the latter.  There are others who can
> tell him if he has been wronged and he need only ask." . . .   A
> person suffering from inadequate treatment is thus responsible for
> determining within the limitations period then running whether the
> inadequacy was malpractice.  We see no good reason for accepting
> a lesser degree of responsibility on the part of a  RICO Plaintiff.

528 U.S. at 555 (quoting *United States v. Kubrick*, 444 U.S. 111 (1979)).  It is the discovery of

the injury, *not* the discovery of the injury and the underlying predicate acts, which starts the

running of the statute of limitations.  *Id.* at 555-57.

Additionally, Allstate's argument that it could not discover it suffered a legally

cognizable injury until the decision in *Mallela* focuses solely on the fraudulent incorporation

portion of their claim.  To the extent that Allstate's RICO injury claims are based upon

fraudulent billing by Valley— for example, bills for procedures that were of no benefit to the

patient, bills in which services were misrepresented, and bills for services not rendered— these

claims certainly were not governed by *Mallela* which did not discuss the issue.

In this case, Allstate noted "Provider held out as P.C." on various dates prior to the New

York Court of Appeals' 2005 decision in *Mallela* as predicate acts.  *(See* Exs. A and B attached

to the Compl.)  Allstate also asserted fraudulent incorporation as a defense to Valley's claims in

the 1999 Action in this Court.  Allstate's argument that it could not know that it suffered a

legally cognizable injury until the 2005 decision in *Mallela* and that the issuance of the *Mallela*

decision is the point at which its claims accrued confuses discovery of the injury with discovery

of the "illegality," so to speak, of the underlying acts. *Cf. Fiesel v. Bd. of Educ. of the City of N.Y.*, 675 F.2d 522, 524 (2d Cir. 1982) ("[A] decision recognizing a cause of action after the period has run does not retroactively interrupt the running of the limitations period. Such delayed accrual could result in an outpouring of stale, difficult to defend claims, contrary to the policy underlying limitations statutes." ).

As a matter of law, Allstate knew or should have known of any injury flowing from Valley's fraudulent incorporation no later than July 2001. In the 1999 Action, Allstate filed an answer, dated October 1999 (*see* Ex. C attached to Harfenist Decl.) alleging, among other things:

- Valley "is not a properly licensed facility according to the Business Corporation Law and the Public Health Law, and thus engaged in the unlawful practice of medicine" (*Id.* at¶ 53);
- Lahiri "acted as a 'front man' for unlicensed individuals to own the plaintiff practice in violation of Business Corporation Law" (*id.* at ¶ 54);
- Valley has "materially misrepresented" that Lahiri is the owner and sole shareholder of Valley "with the purpose and intent of inducing" Allstate "to make payments for medical services which the true owner would not be entitled to receive under the no-fault endorsement of the applicable policies" (*id.* at ¶ 56);
- Allstate "has no obligation to reimburse plaintiff who is not properly licensed to authorize the medical services [Valley] is billing for" (*id.* at ¶ 57);
- Valley "is engaged in the unlawful practice of fee splitting" and therefore is not entitled to recover no-fault benefits (*id.* at ¶62);
- Valley "is not entitled to recover no-fault benefits based on the fraudulent practice of medicine" (*id.* at ¶ 63);
- Valley "has fraudulently practiced medicine" and it is not entitled to enforcement of its illegal contract for reimbursement of no-fault benefits (*id.* at ¶ 65).

Additionally, the answer alleged that treatment was not rendered as billed (*id.* at ¶48); and Valley

ordered excessive testing, treatment or use of treatment facilities not warranted by the condition

of the assignor patients (*id.* at ¶42). Factual support for these allegations were then proffered in

Allstate's Rule 56.1 Statement, dated July 18, 2001, in support of its motion for summary

judgment. (*See* Ex. D, attached to Harfenist Decl.) Indeed, in its Affirmation in Support of

Summary Judgment (*see* Ex. E, attached to Harfenist Decl.) Allstate wrote :

> VALLEY is a classic example of the "Doc in a Box" scheme,
> where a properly licensed physician is listed as the sole shareholder
> of the medical professional corporation, but the true owner(s), who
> is not licensed to practice medicine, actually controls the
> corporation and receives the revenues. As set forth in the
> accompanying memorandum of law, this scheme constitutes the
> "corporate practice of medicine," which has been forbidden in New
> York State for generations. This scheme also runs afoul of New
> York Education Law § 6503(19), which forbids fee sharing with
> anyone other than another licensed physician, and Education Law §
> 6522, which provides that "only a person licensed or otherwise
> authorized under this article shall practice medicine." The
> unauthorized practice of medicine is a felony. Education Law
> §6513. As more fully set forth in the accompanying memorandum
> of law in support of this motion, no fault benefits are, pursuant to
> regulation, payable only to licensed providers. The licensing
> provisions of the Education and Business Corporation Law provide
> for the protection of the patient by attempting to ensure that only
> licensed physicians truly own and control the professional
> corporations through which medicine is practiced. Corporations
> such as Valley seek to avoid these very important requirements.
>
> The financial motive behind the "Doc in a Box" scheme is
> the exploitation of a higher fee schedule for reimbursement under
> the No-Fault law and regulations. The unlicensed owner of a "Doc
> in a Box" often attempts unlawfully to control the corporation
> through a management company. In the case of a chiropractor, this
> arrangement allows the chiropractor to convert the revenues/profits
> of the PC to his own benefit. Moreover, the arrangement allows
> the chiropractor to significantly enhance through unlawful means
> his fee for treatment under no-fault. Under the fee schedule for
> medical services afforded no-fault claimants, a chiropractor who
> can provide many of the same modalities as a physical therapist, is
> paid a significantly lower fee because a chiropractor - unlike a

> physician or physical therapist - may not separately charge for
> treatment modalities. . . . Using the 'Doc in a Box" scheme, the
> chiropractor attempts to gain the prohibited modality payments by
> arranging for the PC's revenues to bypass the shareholder(s) and
> pass through the professional corporation to the true, unlicensed
> owner(s). The pass-throughs are disguised as management fees,
> rent and/or loans.
>
> As detailed below, *based on the undisputed facts uncovered
> during the deposition and document discovery in this case, such is
> precisely what has occurred here.*

*(Id.* at ¶¶ 10-11 (emphasis added)). The claims Allstate raised as a defense in the 1999 Action

mirror its claims in this case. As its filings in the 1999 Action demonstrate, Allstate should have

known of the existence of Valley's scheme no later than July 2001. As to payments made prior

to July 2001 to Valley, Allstate had notice of the injury, as a matter of law, no later than that date.

As to payments made after July 2001 to Valley, Allstate had at least inquiry notice of its injury

on the date the payments were made. Inasmuch as this action was commenced on December 20,

2005 and Allstate can only recover for injuries discovered or discoverable within four years of

that date, the statute of limitations precludes Plaintiffs from recovering for any payments made

by them to Valley prior to December 20, 2001.

Allstate's claims against Elite are another matter. Elite was not a party to the 1999

Action. Indeed, according to the complaint, Elite was not incorporated until sometime in June of

2001. On this motion to dismiss, there is insufficient information to determine whether, as a

matter of law, Allstate "knew or should have known" of the injury from Elite's alleged scheme

prior to December 20, 2001. The date of accrual of those RICO claims are a question of fact.

*See, e.g., Nat'l Group for Commc'ns and Computers Ltd. v. Lucent Techs., Inc.*, 420 F. Supp. 2d

253, 268 (S.D.N.Y.2006).

Plaintiffs seek to avoid the bar of statute of limitations by arguing that 1) the statute of limitations was equitable tolled and 2) Defendants should be equitably estopped from raising the statute of limitations as a defense.  Although Plaintiffs assert these arguments against both Valley and Elite, the Court will address each argument in turn only as to Valley given the Court's determination that the accrual of the RICO claims against Elite remains a question of fact.

## A.  Equitable Tolling as to Valley

In the Second Circuit, it is recognized that a "statute of limitations may be tolled as necessary to avoid inequitable circumstances. . . .  Equitable tolling applies as a matter of fairness where a party had been prevented in some extraordinary way from exercising his rights. " *Iavorski v. INS*, 232 F.3d 124, 129 (2d Cir. 2000) (internal citations and quotation marks omitted); *see also Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir. 2000).  "The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir. 2000).

Plaintiffs urge this Court to adopt the Seventh Circuit's standard for equitable tolling, which does not require an effort by the defendant to prevent the plaintiff from suing. *See Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir. 1990).  All that the Seventh Circuit requires for tolling is that a plaintiff "despite all due diligence [be] unable to obtain vital information bearing on the existence of his claim." *Id.*  In the Second Circuit, however, equitable tolling requires that a plaintiff establish "both that there was 'fraudulent concealment' of the violation and the plaintiff exercised 'due diligence' to discover the claim." *See, e.g., Tho Dinh Tran,* 281 F.3d at 36 (quoting *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194-95 (1997)).

Even assuming equitable tolling does not require any fraudulent concealment on the part

of Valley, Plaintiffs' argument must fail. Equitable tolling requires that the plaintiff exercise "due diligence." *Cada*, 990 F.2d 451; *Tho Dinh Tran,* 281 F.3d at 36; *Nat'l Group for Commc'ns,* 420 F. Supp. 2d at 268.

Plaintiffs argue that they were diligent "in seeking a determination of the issue necessary to determine if [they] had been injured" and point to 1) Valley's withdrawal of its claims in the 1999 Action thereby precluding Allstate from obtaining a ruling as to whether Valley was entitled to no-fault benefits, and 2) Allstate's submission of an amicus curiae brief in *Mallela.* Plaintiffs do not cite to any cases containing similar facts in which a claim of equitable tolling was upheld. In any event, the short answer to Plaintiffs' claim is that they could have diligently pursued their claims in the 1999 Action by asserting counterclaims, not just affirmative defenses. Allstate was free at any time to bring a claim challenging Valley's ability to receive no-fault reimbursement. That the rights settled by M*allela* were "too unsettled, prior thereto, to risk the great expense and effort of appropriate litigation of [its] claims" does not entitle Plaintiffs to toll the statute of limitations. *Fiesel,* 675 F.2d at 524.

## B. Equitable Estoppel as to Valley

Allstate also argues that Valley should be estopped from arguing the bar of the statute of limitations "as they have continued to vigorously assert that Valley and Elite have the legal right to no-fault benefits." (Opp. Mem. at. 12.) Citing the Second Circuit's decision *in State of New York v. Henrickson Brothers Inc.*, 840 F.2d 1065 (2d Cir. 1988), Allstate contends that Valley's fraud was of such a nature to be self-concealing. The problem with this argument is that by July 2001, Allstate had uncovered the alleged fraud and, in fact, had sufficient evidence to defeat Valley's motion for partial summary judgment in the 1999 Action. *(See* discussion *supra.)*

Thus, any equitable estoppel cannot extend past July 2001.

There is no stoppage of the statute of limitations under either theory advanced by Allstate.

In sum, Defendants' motion to dismiss the RICO claims as barred by the statute of limitations is GRANTED as to payments made by Allstate to Valley prior to December 20, 2001, but is DENIED as to payments made to Valley after December 20, 2001, and is DENIED as to all the payments made to Elite.

## VI. Abstention

Citing *Wilton v. Seven Falls Company,* 515 U.S. 277, 282-83 (1995), and *Brillhart v. Excess Insurance Company of America,* 316 U.S. 491, 494 (1942), Defendants argue that this Court should abstain from determining Allstate's ninth cause of action. This cause of action seeks a declaratory judgment that because of Valley's and Elite's fraudulent incorporation, Plaintiffs have no obligation to pay pending or future no-fault claims submitted by them. Plaintiffs counter that the stricter test set forth in *Colorado River Water Conservation Disrct. v. United States*, 424 U.S. 800, 813, 817 (1976), is applicable, but that under either test the request for abstention should be denied.

The Declaratory Judgment Act provides that a district court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Declaratory Judgment Act provides district courts with "an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton,* 515 U.S. at 288. In other words, this Act gives courts "unique and substantial discretion" in deciding whether to declare the rights of federal litigants. *Id.* at 286. Thus, unlike most actions where a district court has a "virtually unflagging obligation" to exercise jurisdiction, *Colorado River,* 424 U.S. at 817*,* courts "possess

discretion in determining whether and when to entertain an action under the Declaratory

Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."

*Wilton*, 515 U.S. at 282.

In determining whether the controversy between the parties "can be better settled in the

proceeding pending in the state court," *Brillhart*, 316 U.S. at 495, some of the factors to be

considered include: (1) whether the state and federal actions are parallel; (2) the scope of the state

court proceeding; (3) the nature of the defenses available in state court; (4) whether the necessary

parties have been joined; (5) whether the claims of all parties in interest can be adjudicated in the

state court; (6) the order of filing; and (7) the choice of law. *Wilton*, 51 U.S. at 282-83; *Brillhart*,

316 U.S. at 495; *Nat'l Union Fire Ins., Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 22-24 (2d

Cir. 1997); *Youell v. Exxon Corp.,* 74 F.3d 373, 373-76 (2d Cir. 1996).

The Second Circuit has held that proceedings are parallel for purposes of abstention

"when the two proceedings are essentially the same; that is, there is an identity of parties and the

issues and relief sought are the same." *Nat'l Union,* 108 F.3d at 22. This federal action is parallel

to the pending state court proceedings. Both this action and the state court actions involve the

question whether Valley is fraudulently incorporated and whether Valley is entitled to be paid for

outstanding bills in view of the *Mallela* decision. *Cf. Nat'l Fire Ins. Co. v. Warrentech,* No. 00

Civ 5007, 2001 WL 194903, at *3 (S.D.N.Y. 2001) (holding abstention is appropriate where

claims in federal suit are readily assertable as defenses and/or counterclaims in the state suit). In

addition, Allstate and Valley are parties in this and the state proceeding. *See Nat'l Union*, 108

F.3d at 22 (the presence of the insurance company and insured in both suits rendered the two

actions parallel even though the federal action involved more parties).

31

Of particular importance here is that the rule of decision in the declaratory judgment cause of action is one of New York, and not federal, law. The absence of federal issues in a declaratory judgment action weighs heavily in favor of abstention. *Nat'l Union,* 103 F.3d at 20-23.

Finally, New York has a strong interest in regulating its no-fault system and "it would be unnecessarily duplicative for this Court to interfere with ongoing state court proceeding[s] and effectively participate in a 'race to res judicata.'" *Troiano v. Mardovich,* No. 06 Civ 523, 2006 WL 2320517, at *5 (S.D.N.Y. 2006) (quoting *Nat'l Union Fire Ins. Co. v. Turbi de Angustia,* No. 05 Civ 2068, 2005 U.S. Dist. LEXIS 18141, at *10 (S.D.N.Y. 2005)). "[D]istrict courts routinely invoke the doctrine of abstention in insurance coverage actions, which necessarily turn on issues of state law." *Travelers Indem. Co. v. Philips Elect. N.A. Corp.,* No. 02 Civ 9800, 2004 WL 193564, at *2 (S.D.N.Y. 2004).

Taking into account these factors and considering the totality of the circumstances, the Court exercises its discretion and abstains from hearing Allstate's ninth cause of action to the extent it seeks a declaratory judgment that Plaintiffs are not required to pay pending or future no-fault claims submitted by Valley. Accordingly, the motion to abstain from the declaratory judgment cause of action as to Valley is GRANTED.

It is unclear whether the Defendants are requesting that this Court abstain from the declaratory judgment cause of action as it relates to Elite. Defendants have not identified any pending state litigation between Allstate and Elite. The absence of any parallel proceedings would preclude abstention. To the extent the motion to abstain extends to the declaratory judgment cause of action against Elite, it is DENIED.

***V.  Rule 11 Sanctions***

Defendants' request for Rule 11 sanctions is denied.  The imposition of sanctions is discretionary.  *See K.M.B. Warehouse Distrib. Inc. v. Walker Mfg. Co.,* 61 F.3d 123, 131 (2d Cir. 1995).  A court may sanction the advancement of a frivolous argument.  *See In re Cohoes Indus. Terminal, Inc.,* 931 F.2d 222, 227 (2d Cir. 1991).  For a legal argument to warrant sanctions under Rule 11 "it must be clear under existing precedents that there is no chance of success." *Shafii v. British Airways, PLC,* 83 F.3d 566, 570 (2d Cir. 1996).  Sanctions should be reserved for those cases where it is patently clear that a claim has absolutely no chance of success and all doubts should be resolved in favor of the signing party.  *K.M.B. Warehouse,* 61 F.3d at 131.  In this case, it was not patently clear that any of  Plaintiffs' claims had absolutely no chance of success.   Accordingly, the motion for sanctions is DENIED.

### *Conclusion*

Defendants' motion to dismiss the first and eighth causes of action to the extent the claims seek reimbursement for no-fault benefits paid prior to April 4, 2002 is GRANTED except for those claims based on fraudulent billing for services, treatment or equipment that were never provided.  Defendants' motion to dismiss the second through seventh causes of action is GRANTED insofar as Plaintiffs seek to recover for payments made to Valley prior to December 20, 2001, but is otherwise DENIED.  Defendants' motion to have this Court abstain from hearing the ninth cause of action as against Valley is GRANTED but is otherwise DENIED.  Defendants' motion for Rule 11 sanctions is DENIED.

The current complaint does not distinguish between the three named Plaintiffs.  Nor does

it specify the exact dates payment were made or specify to which defendant. It may well be that as a result of this Memorandum, one or more of the named Plaintiffs no longer have any valid claims. Accordingly, the Plaintiffs are directed to file an amended complaint in conformity with this Memorandum within 30 days of the date hereof.[5] With respect to the RICO causes of action, the amended complaint shall specify 1) the Plaintiff(s) that made payments to Valley after December 20, 2001, the amount of each payment, and the exact date each payment was made; and 2) the Plaintiff(s) that made payments to Elite, the amount of each payment, and the exact date payment was made. With respect to the causes of action for fraud and unjust enrichment for payments made after April 4, 2002, the amended complaint shall specify which Plaintiff made payments and the date, payee, and amount of each payment. With respect to the causes of action for fraud and unjust enrichment for payments made prior to April 4, 2002, the amended complaint may reassert the claims for fraud and unjust enrichment to the extend that Plaintiffs can plead that a timely denial was issued or can plead fraud claims not subject to preclusion as set forth herein, and as to those claims shall specify the payor, the payee, and the date and amount of each payment.

**SO ORDERED**

Dated: Central Islip
       February 21, 2007

                                        /s/_____
                                        Denis R. Hurley,
                                        United States Senior District Judge

---

[5]  Even if not requested, a court may *sua sponte* grant leave to amend. *Steger v. Delta Airlines,* 382 F. Supp. 2d 382, 387 (E.D.N.Y. 2005).