UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY and
DEERBROOK INSURANCE COMPANY,

                Plaintiffs,

      -against-

VALLEY PHYSICAL MEDICINE &
REHABILITATION, P.C., ELITE PHYSICAL
MEDICINE & REHABILITATION, P.C.,
UNIVERSAL EXPRESS INC., DR. JOSEPH
MILLS, DR. PAVANI TIPIRNENI, DR.
SAROSH QUERESHY, DR. ERIC ROTH,
and DR. SWAPNIDIP LAHIRI,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OF DECISION AND ORDER**

05-5934 (DRH)(MLO)

**Appearances:**

**Cadwalader, Wickersham & Taft LLP**
Attorneys for Plaintiffs
One World Financial Center
New York, NY 10281
By: William J. Natbony, Esq.

**Short & Billy, P.C.**
Attorneys for Plaintiffs
217 Broadway, Suite 300
New York, NY 10007
By: Skip Short, Esq.

**Friedman, Harfenist, Langer & Kraut**
Attorneys for Defendants Valley Physical
Medicine & Rehabilitation, P.C., Elite
Physical Medicine & Rehabilitation, P.C.,
Universal Express, Inc., Dr. Joseph Mills
and Dr. Pavani Tipirneni
300 Marcus Avenue, Suite 2E1
Lake Success, NY 11042
By: Steven J. Harfenist, Esq.

**Rivkin Radler LLP**
Attorneys for Amicus Curiae, State Farm Mutual Automobile Insurance Company
926 Reckson Plaza
Uniondale, NY 11556
By: Evan H. Krinick, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Deerbrook Insurance Company (collectively "Allstate" or "Plaintiffs") commenced this action on December 20, 2005 asserting causes of action for fraud (first claim for relief), for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (second through seventh claims for relief), unjust enrichment/restitution (eighth claim for relief) and a declaratory judgment (ninth claim for relief). Allstate's claims arise out of payments it made from 1996 to 2002 totaling in excess of one million dollars to Defendants Valley Physical Medicine & Rehabilitation, P.C. ("Valley") and Elite Physical Medicine & Rehabilitation, P.C. ("Elite") for services allegedly rendered to Allstate's insureds under New York State's no-fault insurance system. (Compl. ¶¶ 58 & 66.) Defendants then moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) and for sanctions. In moving to dismiss Defendants argued that 1) the RICO causes of action were barred by the statute of limitations; 2) the causes of action for fraud and for unjust enrichment to recover those benefits paid prior to April 4, 2002 were barred under

*State Farm Automobile Insurance Company v. Mallela,* 4 N.Y.3d 313, 794 N.Y.S.2d 700 (2005); 3) the cause of action for fraud should be dismissed, inter alia, as precluded under New York's no-fault law; and 4) this Court should abstain from determining Allstate's claim for declaratory relief because of the pendency of state cases involving the issue of Valley's corporate status.

By Memorandum and Order dated February 21, 2007, this Court rendered a decision on Defendants' Rule 12(b)(6) motion to dismiss and for sanctions, granting in part the motion to dismiss. In particular, as to the first and eighth causes of action alleging fraud and unjust enrichment respectively, the Court (1) dismissed such claims pursuant to *State Farm v. Mallela*, 4 N.Y.3d 313 (2005) to the extent they alleged fraudulent incorporation and sought to recover payments made to defendants prior to April 4, 2002 and (2) dismissed the fraudulent billing claims, except for those claims based on fraudulent billing for services, treatment or equipment that were never provided. The basis for the Court's Rule 12(b)(6) dismissal of the fraud and unjust enrichment claims grounded in fraudulent billing was:

> The complaint fails to allege that Allstate timely denied [in accordance with New York's no-fault 30-day rule] any of the allegedly fraudulent bills paid prior to April 4, 2002. Therefore, the addition of fraud claims premised on billing for excessive services, services that were medically unnecessary, or services by unlicensed individuals does not save Allstate's fraud and unjust enrichment claims. If no-fault insurers are precluded from raising fraudulent billing in the form of unnecessary or excessive services as a defense to non-payment absent a timely denial, then certainly such allegations cannot support an affirmative claim absent a timely denial. *Cf. Presbyterian Hosp.,* 90 N.Y.2d at 285 (stating no-fault's prompt payment of uncontested first party benefits "is part of the price paid to eliminate common law contested actions").

Allstate now moves for reconsideration of the Court's February 21, 2006 decision to the extent it dismissed Allstate's fraud and unjust enrichment claims pursuant to the 30-day rule. For

the reasons set forth below, the Court grants the motion for reconsideration and upon reconsideration vacates its prior decision to the extent it dismissed the fraudulent billing claims in the first and eighth causes of action.

**Background**

Familiarity with the facts and the Court's prior decision is presumed, and will not be reiterated here. Briefly stated, the factual background of this case as set forth in the Plaintiff's complaint is as follows. In New York, only doctors of medicine and of osteopathy are physicians and are authorized to practice medicine. *See* N.Y. Educ. Law §§ 6522, 6524. New York law also prohibits non-physicians from sharing ownership in medical service corporations. *See* N.Y. Bus. Corp. Law §§ 1507, 1508, and N.Y. Educ. Law § 6507(4)(c). As alleged in the complaint, the Defendants engaged in a scheme to evade the State's prohibition on non-physicians from sharing ownership in medical service corporations in order to facilitate fraudulent no-fault billing. (Compl. ¶¶ 7- 45.) Mills, a chiropractor, paid Drs. Tipirneni, Quereshy, and Lahiri to use their names on paperwork filed with the State to establish medical service corporations, to wit: Valley and then Elite.[1] (Compl. ¶¶ 7, 31-32.) Once Valley and Elite were established under the facially valid cover of the nominal physician owners, Mills actually operated the companies. (Compl. ¶¶ 11, 25.) Enabled by the doctor defendants, Valley, Elite, Universal, and Mills proceeded to bill Allstate for medical services that were not provided by medical doctors, for medically unnecessary and/or medically useless services, and engaged in other fraudulent billing. (Compl. ¶¶ 12-14, 31-36.)

---

[1] According to the complaint, when Allstate and other insurers refused to pay Valley's bills, Mills formed Elite in June 2001, and Elite continued to operate the scheme at the same location as Valley. (Compl. ¶ 14.)

**Discussion**

*I. Allstate's Motion for Reconsideration*

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Union,* 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (finding district court properly exercised its discretion to reconsider earlier ruling in light of the introduction of additional relevant case law and substantial legislative history); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). A party may, however, introduce relevant authority that was not before the district court when it initially ruled on the matter. *See Vaughn v. Consumer Home Mortgage Co.*, 2007 WL 140956 at *6

(E.D.N.Y. Jan. 22, 2007). In the alternative, reconsideration is appropriate if a court "misinterpreted or misapplied" relevant case law in its original decision.

Here, Allstate is not asking the Court to examine any new legal issues or arguments. Rather, Allstate is requesting that the Court reconsider its decision because under relevant law the role of the 30-day rule in New York Insurance Law § 5106 is limited to the specific no-fault statutory scheme in which it operates and does not bar Allstate's claims for fraudulent billing. In light of the additional relevant authority cited by Allstate in support of its motion for reconsideration, Allstate's motion is procedurally sound and is granted.

## *II. Upon Reconsideration, the Court Holds that New York's No-Fault Preclusion Rule Does Not Bar Allstate's Affirmative Claims for Fraud and Unjust Enrichment*

Allstate raises several arguments in its motions for reconsideration. First, it is claimed that neither the purpose nor language of New York Insurance Law Section 5106 purports to preclude an insurer's right to recover payments made as a result of fraud, including excessive treatment fraud. Second, it is argued that New York courts and the New York Insurance Department have rejected the contention that Insurance Law § 5106 precludes affirmative actions based on fraud when an insurer has not denied a claim on that ground within the statutory 30-day period and that the courts have limited § 5106's preclusive effect to the assertion of defenses. Third, Allstate maintains this Court's interpretation of § 5106 directly conflicts other New York statutory provisions, to wit, (a) Insurance Law § 409, which requires insurers to investigate fraud and commence civil actions to recover fraudulently obtained insurance proceeds, and (b) CPLR §§ 203 and 213, which provide for six year statute of limitations for fraud and unjust enrichment actions.

In response, Defendants argue, inter alia, that while there is nothing in the statutory

scheme that precludes recovery actions based on fraud, it is simply wrong to conclude that defenses once waived by operation of law can then be used in an affirmative action. Defendants assert that:

> [i]f the argument that Allstate puts forth (that a carrier although precluded from raising a defense could then utilize the same theory as a basis for an affirmative recovery action) is to be credited, it would create a bizarre paradox. If a medical provider sued for payment on a claim which Allstate did not timely deny or did not deny based on medical necessity grounds, the provider would be allowed to recover, even if the bills were for "fraudulent" unnecessary services as this type of "fraud" is waived if not presented in a denial of claim. Under Allstate's theory, it would then be allowed to file a new action utilizing the same theory that it was previously precluded from using defensively and ultimately recoup the very payment it was Court Ordered to make. Taken to its extreme, Allstate's theory of affirmative recovery would emasculate the preclusionary rule and the stated goal of prompt payment.

Defs.' Mem. in Opp. to Recon. at 11-12.

Upon reconsideration, it appears to this Court that such a seeming anomaly does in fact exist under New York Law. Giving "proper regard" to the New York State decisions discussed below, *see DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)*; Phansalkar v. Andersen Weinroth & Co.,* 344 F.3d 184, 199 (2d Cir. 2003), the Court holds that § 5106 does not preclude an insurer who fails to timely deny a claim from maintaining an affirmative cause of action for fraud (or unjust enrichment) based on allegations of fraudulent billing.

Two unreported decisions, rendered prior to this Court's original decision and brought to the Court's attention for the first time on reconsideration, are instructive.

In *Progressive Northeastern Ins. Co. v. Advanced Diagnostic and Treatment Med. P.C.*, 229 N.Y.L.J. 18 col. 2 (Aug. 2, 2001, Sup. Ct. N.Y. County), Justice Gammerman found that

affirmative recovery claims under common law fraud and unjust enrichment theories, including excessive and unnecessary treatment, were not barred by Insurance Law §5106. Justice Gammerman reasoned as follows:

> This section is clearly intended to provide for the prompt payment of covered No-Fault expenses due to a claimant. It would not appear to apply where, as here, the insurer has already paid those benefits and discovers fraud on the part of a health care provider, who has submitted fraudulent claims. Significantly, the Department of Insurance has recently issued an opinion on the specific issue of whether Section 5106(a) precludes initiation of civil recovery actions by insurers beyond the 30-day period in order to recover monies alleged to have been obtained by fraudulent means. That opinion, issued on November 29, 2000 specifically holds that:
>
> The New York No-Fault reparations law, more specifically through the payment of benefits provisions of N.Y. Ins. Law § 5106 (McKinney 2000), is in no way intended and should not serve as a bar to subsequent actions by an insurer for the recovery of fraudulently obtained benefits from a claimant, where such action is authorized under the auspices of any statute or under common law.
>
> Department of Insurance Opinion, 11/29/00 . . . . To extend this provision, as defendants suggest to preclude subsequent recovery by an insurer, is not justified by the language of the statute. Moreover, Insurance Law § 409 requires insurers to have special investigation units, and to include in their fraud detection plans "coordination with other units of an insurer for the investigation and <u>initiation of civil actions</u> based upon information received by or through the special investigation unit," Insurance Law §409(c)(4) (emphasis added). Thus, Insurance Law § 409 anticipates the initiation of civil actions, such as this one.

*Accord Allstate Ins. Co. v. Belt Parkway Imaging P.C.*, Index No. 600509/03 (Sept. 22, 2004 Sup. Ct. N.Y. County) slip op. at 7 (holding that affirmative fraud recovery would not be precluded by § 5106).

Similarly, in *State Farm Mut. Auto Ins. Co. v. Kalika*, Civil Action No. 04-4631

(E.D.N.Y. March 16, 2006) (Report and Recommendation of Magistrate Judge Pollack [Docket No. 100] adopted by Judge Amon on March 31, 2006 [Docket No. 105]), the court found that § 5106's thirty-day rule did not preclude an action for fraud to recover for allegedly medically worthless and unnecessary radiological services. The court reasoned, in part:

> [t]he policy of ensuring prompt payment or denial of claims in exchange for a reduction in the number of litigation claims filed is not served by allowing fraudulent schemes to be perpetrated without recourse to the insurer seeking reimbursement for claims wrongly paid as a result of fraud and deceit. Although defendants contend that the 30-day rule simply requires that an insurer raise such an issue within the 30 day period through a proper denial of the fraudulent claim, often the nature of fraud is such that it is not easily discovered within that short period of time. Indeed, the New York Legislature, in providing a six year statute of limitations for fraud actions, has recognized the difficulty often encountered in unearthing a fraudulent scheme.

Slip op. at 10.

In addition, *Carnegie Hill Orthopedic Servs. v. Geico Insur. Co.*, 2008 WL 356544, 2008 N.Y. Slip Op. 30315 (Jan. 29, 2008 Sup. Ct. Nassau County) (Palmieri, J.), decided subsequent to this Court's earlier ruling, also warrants mention. *Carnegie* was an action brought by a service provider for payment of no fault claims. The defendant therein, Geico, alleged that the plaintiff carried out an extensive and pervasive practice of fraud which included fabricating injuries, falsifying medical records to justify surgeries billed for but not performed and performance of procedures/surgeries which risked harm to patients. The plaintiff contended that nevertheless it was entitled to be paid or have its claims denied within 30 days after proof of their claims were supplied and because neither occurred they were entitled to be paid, with interest and attorneys' fees. Slip op. at 2-3. Before the court was the plaintiff's motion for summary judgment on two of it many claims.

9

First, the *Carnegie* Court found that the plaintiff had made a prima facie showing of entitlement to judgment by submitting evidentiary proof that the prescribed statutory billing forms had been mailed and received, and that payment of No-Fault benefits was overdue. Then, relying on the decision in *Fair Price Supply Corp. v. Travelers Indemnity Co.*, 9 Misc.3d 76 (App. Term, 2d Dept. 2005), *aff'd*, 42 A.D.3d 277 (2d Dept. 2007), *leave to appeal to Court of Appeals granted,* 2007 Slip Op. 78445 (2d Dept. Sept. 19, 2007), Justice Palmieri held that Geico's defenses grounded in fraud were precluded by its failure to comply with the 30-day rule but that Geico's affirmative cause of action for fraud was not. *Carnegie*, slip op. at 6-7. Justice Palmieri stated:

> The Court notes, but must reject, the defendant's contention that because a counterclaim in fraud exists that might be equal or greater value than what the plaintiff stands to recover on these claims, it should deny summary judgment. A denial on this ground is appropriate where the claims are so intertwined that they cannot be separately analyzed. However, here they can be, because the requirements of Department of Insurance regulations clearly have been viewed as an obligation separate and distinct from any other obligation that may be imposed on the parties by law. . . .
> The foregoing, however, also means that the counterclaim asserted by the defendant to recover moneys already paid in connection with any of the allegedly fraudulent claims can be separately pursued. On this record . . . defendant has raised a triable issue of fact as to fraud in connection with the claims presented. The theories of recovery based on these allegations sound in fraud and unjust enrichment and are attacked by the plaintiffs as being without support under New York common law. However, the Appellate Term endorsed both such theories in *Fair Price*, and its determination was affirmed by the Appellate Division without any comment on this suggested remedy. For this reason summary judgment dismissing the counterclaim is denied.

Slip. op. at 8-9. The *Carnegie* Court also noted that granting plaintiff summary judgment would not collaterally estopped Geico on its counterclaim as collateral estoppel does not apply to a

10

prior determination involving solely a question of law, which in the case before it was the application of the 30-day rule or the exception thereto. *Id*. at 8 n.1. In other words, the *Carnegie* Court precluded Geico from defending a claim for payment on the basis of billing fraud but allowed its counterclaim, based on that same billing fraud, to proceed.

*Carnegie* and the other cases discussed above make clear that the obligations under Insurance Law §5106 only extend to preclude fraudulent billing defenses to claims for payment and do not preclude an insurer from maintaining an affirmative action for fraud or unjust enrichment based on that same billing fraud.

This result is supported by public policy. As Magistrate Judge Gold sagely observed in *State Farm Mut. Auto. Ins. Co. v. Grafman*, Civil Action No. 04-2609 (E.D.N.Y. May 22, 2007): "If an insurer could not later bring an action for fraud, wrongdoers would have an incentive to flood insurers with bogus claims and would be unjustly enriched when the insurers found themselves unable to uncover the fraud within the 30-day period. . . . Precluding affirmative fraud claims would undoubtedly result in the public paying higher premiums while individuals who engaged in fraudulent, criminal activity reaped the reward." Slip Op. at 22-23.

### *Conclusion*

For the reasons set forth above, the Court grants Allstate's motion for reconsideration and upon reconsideration vacates its prior decision to the extent it dismissed the fraudulent billing claims in the first and eighth causes of action.

**SO ORDERED.**

Dated: Central Islip
March 31, 2008

/s/ _____

Denis R. Hurley,
United States Senior District Judge