```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY and
DEERBROOK INSURANCE COMPANY,

                    Plaintiffs,                      MEMORANDUM AND ORDER

        -against-                                    05-5934 (DRH)(MLO)

VALLEY PHYSICAL MEDICINE &
REHABILITATION, P.C., ELITE PHYSICAL
MEDICINE & REHABILITATION, P.C.,
UNIVERSAL EXPRESS INC., DR. JOSEPH
MILLS, DR. PAVANI TIPIRNENI, DR.
SAROSH QUERESHY, DR. ERIC ROTH,
and DR. SWAPNIDIP LAHIRI,

                    Defendants.
----------------------------- ----------X
```

**Appearances:**

**Cadwalader, Wickersham & Taft LLP**
Attorneys for Plaintiffs
One World Financial Center
New York, NY 10281
By:    William J. Natbony, Esq.

**Short & Billy, P.C.**
Attorneys for Plaintiffs
217 Broadway, Suite 300
New York, NY 10007
By:    Skip Short, Esq.

**Friedman, Harfenist, Kraut & Perlstein**
Attorneys for Defendants Valley Physical
Medicine & Rehabilitation, P.C., Elite
Physical Medicine & Rehabilitation, P.C.,
Universal Express, Inc., Dr. Joseph Mills
and Dr. Pavani Tipirneni
3000 Marcus Avenue, Suite 2E1
Lake Success, NY 11042
By:    Steven J. Harfenist, Esq.
       Neil Torczyner, Esq.

**HURLEY, Senior District Judge:**

Presently before the Court is a motion brought by defendants Valley Physical Medicine & Rehabilitation, P.C. ("Valley"), Elite Physical Medicine & Rehabilitation, P.C. ("Elite"), Universal Express, Inc. ("Universal"), Dr. Joseph Mills ("Mills") and Dr. Pavani Tipirneni ("Tipirneni") (collectively "Defendants") to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the first through seventh causes of action asserted in the amended complaint.[1] For the reasons set forth below, the motion to dismiss is denied.

## Procedural Background

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Deerbrook Insurance Company (collectively "Allstate"or "Plaintiffs") commenced this action on December 20, 2005 asserting causes of action for fraud (first claim for relief), for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (second through seventh claims for relief), unjust enrichment/restitution (eighth claim for relief) and a declaratory judgment (ninth claim for relief). As asserted in the original complaint, Allstate's claims arise out of payments it made from 1996 to 2002 totaling in excess of one million dollars to Valley and Elite for services allegedly rendered to Allstate's insureds under New York State's no-fault insurance system. (Compl. ¶¶ 58 & 66.) Defendants moved to dismiss the complaint and the Court partially granted the motion to dismiss and directed the filing of an amended complaint. More particularly, the Court (1) dismissed the causes of action for fraud and unjust enrichment seeking

---

[1] Plaintiffs voluntarily dismissed the claims against Dr. Eric Roth. Drs. Quereshy and Lahiri have not yet appeared in the action.

to recover for no-fault payments made to Defendants prior to April 4, 2002 to the extent they were premised upon fraudulent billing in the nature of excessive or unnecessary services or for services by unlicensed individuals that were not timely denied in accordance with N.Y. Insurance Law § 5106(a); and (2) dismissed the RICO claims as barred by the statute of limitations to the extent they sought to recover for payments made to Valley prior to December 20, 2001. *See* Memorandum & Order, dated February 21, 2007. Thereafter, the Court granted Allstate's motion for reconsideration and vacated its prior decision to the extent it dismissed the fraud and unjust enrichment claims based on fraudulent billing. *See* Memorandum & Order, dated March 31, 2008. Familiarity with these prior decisions is presumed.

## The Allegations of the Amended Complaint

The following facts are taken from the Amended Complaint ("AC").

In New York, only doctors of medicine and of osteopathy are physicians and are authorized to practice medicine. *See* N.Y. Educ. Law §§ 6522, 6524. New York law also prohibits non-physicians from sharing ownership in medical service corporations. *See* N.Y. Bus. Corp. Law §§ 1507, 1508, and N.Y. Educ. Law § 6507(4)(c). (AC ¶¶ 1, 26-27.) The Defendants allegedly engaged in a scheme to evade the State's prohibition on non-physicians from sharing ownership in medical service corporations in order to facilitate fraudulent no-fault billing. (AC ¶¶ 3- 10.) In 1996 Mills, a chiropractor, closed his chiropractice office and formed Universal for the purpose of managing a professional medical corporation through which he could bill for medical services. Mills paid Drs. Tipirneni, Quereshy, and Lahiri to use their names on paperwork filed with the State to establish medical service corporations, to wit: Valley and then

Elite.[2] (AC ¶¶ 11-12; 30-31.) Once Valley and Elite were established under the facially valid cover of the nominal physician owners, Mills actually operated the companies. (AC ¶¶ 12) Enabled by the doctor defendants, Valley, Elite, Universal, and Mills proceeded to bill Allstate for medical services that were either nonexistent, or were not provided by medical doctors, or medically unnecessary and/or medically useless, and engaged in other fraudulent billing practices. (AC ¶¶ 13-14; 32-35.)[3] The amended complaint provides further specificity as to the allegedly fraudulent billing practices. (*See* AC ¶¶ 36-45; *id.* at Exs. B &C.) Mills then drained all the profits from Valley and Elite though management agreements and leases to Universal, which is wholly owned by him.

The instant action is neither the first nor the only action between these parties. In 1999, Valley commenced an action against Allstate, which was removed to this Court, seeking payment for services allegedly rendered under no-fault policies from 1997-99. During discovery, Allstate obtained evidentiary support for its defense that Mills was the true owner of Valley. Although a trial of the action began, during its direct case Valley voluntarily withdrew the action with prejudice. (AC ¶ 15.)

Based on these allegations and as relevant to the instant motion, Allstate alleges a cause of action for common law fraud (first claim for relief) and six RICO causes of action (second through seventh claims for relief).

---

[2] According to the complaint, when Allstate and other insurers refused to pay Valley's bills, Mills formed Elite in June 2001, and Elite continued to operate the scheme at the same location as Valley. (Compl. ¶ 14.)

[3] Exhibit B to the amended complaint contains a listing of documents allegedly mailed by Valley, Universal, Mills and Tipirneni to Allstate and Exhibit B contains a listing of documents allegedly mailed by Elite, Universal, Mills and Tipirneni to Allstate.

4

*Discussion*

I.  **Motion to Dismiss Standard**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting a two-pronged approach for courts considering a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." *Id.* at 1950.

## II. The RICO Causes of Action

### A. *Applicable Law*

"RICO is a broadly worded statute that 'has as its purpose the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001) (quoting S. Rep. No. 91-617, at 76 (1969)). "Because the mere

6

assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Bell v. Hubbert*, 2007 WL 60513, at *5 (S.D.N.Y. Jan. 8, 2007) (citations and internal quotation marks omitted).

"To establish a RICO claim, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citations and internal quotation marks omitted). Thus, to state a claim under the civil RICO statute, "a plaintiff has two pleading burdens." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).

First, the complaint must allege that the defendant has violated "the substantive RICO statute . . . commonly known as 'criminal RICO.'" *Id.* In order to meet this initial burden, a plaintiff must plead "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *See id.* Briefly, a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) ("For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular

7

fraudulent course of conduct and work together to achieve such purposes.") (citation and internal quotation marks omitted). "Racketeering activity" is defined as certain criminal acts under state and federal law including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1)(B). Allegations in support of predicate acts sounding in fraud, such as mail or wire fraud, must satisfy the rigors of Rule 9(b). *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir. 1993); *Zhu v. First Atl. Bank*, 2005 WL 2757536, at *3 (S.D.N.Y. Oct. 25, 2005). A "pattern of racketeering activity" requires "at least two predicate acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" *DeFalco*, 244 F.3d at 321 (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

Second, a plaintiff must allege that the injury to business or property occurred by reason of a violation of the criminal RICO statute. *See Moss*, 719 F.2d at 17.

In this case, Plaintiffs assert claims pursuant to §§ 1962(c) and (d). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c). Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

**B.** *Basis of the Motion*

In support of the motion to dismiss the RICO claims, Defendants argue (1) Allstate

cannot demonstrate that its reliance was reasonable, "a defect which dooms all of the RICO causes of action" (Defs. Mem. at 8); and (2) as to the individual RICO claims, Allstate has not properly pleaded (a) an enterprise, (b) a conspiracy, (c) continuity, and (d) predicate acts. The Court shall address the arguments seriatim.

    C.    *The Issue of Reasonable Reliance*

According to Defendants, Allstate's substantive RICO claims fail (1) because the decision in *Bridge v. Phoenix Bond & Indemn. Co.*, __ U.S. __, 128 S. Ct. 2142 (2008), while limiting the application of the reliance requirement, did not eliminate it and reliance is still an element to be pled and proven, and (2) "its status as a sophisticated insurer and the verification process provided by New York's No-Fault regulations mean that Allstate can not claim it relied on the materials it received from the defendants or that such reliance was reasonable and therefore it was not injured by reason of the Defendants' alleged activities . . . ." (Defs. Mem. at 8.)

In *Bridge*, the Court held that "a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentation."[4] *Id.* at 2145. The Court reasoned that "a person can be injured 'by reason of' a pattern of mail fraud even if he has not relied on any misrepresentation." *Id.* at 2139. Although "the absence of first-party reliance may

---

    [4] Although the holding in *Bridge* was limited to the predicate act of mail fraud, the Court did note that "the mere fact that the predicate acts underlying a particular RICO violation happen to be fraud offenses does not mean that reliance, an element of common-law fraud, is also incorporated as an element of a civil RICO claim," 128 S. Ct. at 2141, suggesting that its holding extends beyond mail fraud.

9

in some cases tend to show that an injury was not sufficiently direct to satisfy § 1964(c)'s proximate-cause requirement, . . . it is not in and of itself dispositive." *Id.* at 2144. "Nor is first-party reliance necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in . . . *Anza* [*v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)]." *Id.* Instead, the alleged injury must be "a foreseeable and natural consequence" of the defendant's predicate acts. *Id.*

> The Court provided the following example:
>
> [S]uppose an enterprise that wants to get rid of rival businesses mails misrepresentations about them to their customers and suppliers, but not to the rivals themselves. If the rival businesses lose money as a result of the misrepresentations, it would certainly seem that they were injured in their business "by reason of" a pattern of mail fraud, even though they never received, and therefore never relied on, the fraudulent mailings.

*Id.* at 2139.

Here, under *Bridge*, Plaintiffs' claims survive as their injury, i.e. their payment of purportedly bogus claims, was "a foreseeable and natural consequence" of Defendants' predicate acts. Accordingly, the Court finds that Plaintiffs have adequately alleged that they have been injured "by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

Nor is the Court persuaded by Defendants' argument that Allstate's status as a sophisticated insurer and the verification process provided by New York's No-Fault regulations mean that Allstate can not claim it relied on the materials it received from the defendants or that such reliance was reasonable. Reliance is not a matter appropriately decided on a motion to dismiss. *See AIU Insur. Co. v Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *14 (E.D.N.Y.

10

Feb. 22, 2005). Merely having the means available to inquire does not preclude reliance; the critical factor is the existence of a reason for further inquiry. The existence of a reason for further inquiry is highly fact dependent, even under the circumstances alleged herein. *See JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 408) (S.D.N.Y. 2004) ("Whether a duty to inquire is triggered is a context specific and fact-based inquiry.") Moreover, the argument that the verification process available under no-fault precludes reliance is nothing more than a reassertion of the Insurance Law § 5106 and no-fault 30-day rule argument dressed up in different clothing. For the reasons set forth in the Court's decision of March 31, 2008, § 5106 and the 30-day rule do not preclude Allstate's claims.

### C. Enterprise

In support of their argument that Allstate has failed to properly allege an enterprise, Defendants maintain that the second and third causes of action fail to meet the distinctiveness requirement, while the fourth and fifth causes of action are subject to dismissal as premised solely on conclusory allegations of associations in fact.

#### 1. *The Enterprise Requirement Generally*

The RICO statute defines enterprise as "any individual, partnership, corporation, association, or other legal entity, and any ongoing union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(3). RICO's enterprise requirement requires a plaintiff to "allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161-62 (2001); s*ee Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 343 (2d Cir. 1994) ("by virtue of the distinctness

requirement, a corporate entity may not be both the RICO person and the RICO enterprise").

An associated in fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

"In practice, the dual requirement of (1) distinctness and (2) the proof needed to demonstrate an association-in-fact, work in tandem to weed out claims dressed up as RICO violations but which are not in fact. Specifically, the distinctness doctrine requires a plaintiff to demonstrate that the RICO person is legally separate from the RICO enterprise, while the association-in-fact requirements help ensure that distinctiveness is not achieved by simply tacking on entities to the enterprise which do not in fact operate as a 'continuing unit' or share a 'common purpose.' " *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 447 (2d Cir. 2008) (citing *Turkette*, 452 U.S. at 583); *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).

### 2.   *The Distinctiveness Requirement Has Been Met*

The amended complaint adequately alleges the existence of two distinct entities, (1) the person(s) and (2) the enterprise. While not necessarily a model of clarity, the amended complaint does allege that in the second cause of action that Valley and Universal "each" constitute a separate enterprise and that Valley, Lahiri, Quereshy, Tipirneni and Mills were persons associated with the Universal enterprise while Universal, Lahiri, Quereshy, Tirirneni and Mills were persons associated with the Valley enterprise. Similarly, in the third cause of action it is alleged that Elite and Universal "each" constitute a separate enterprise and that Mills, Tipirneni

12

and Universal were persons associated with the Elite enterprise while Elite, Mills and Tipirneni were persons associated with the Universal enterprise. Accordingly, distinctiveness has been adequately alleged.

### 3. *Associations in Facts are Adequately Pleaded*

Defendants' motion to dismiss the fourth and fifth causes of action which allege association-in-fact enterprises is premised on the notion that paragraphs 68-81 (the fourth and fifth causes of action) fails to contain factual allegations specifying the hierarchy, organization and activities of the alleged enterprise and how its members joined together as a group to achieve this purpose. Their argument, however, ignores the fact that paragraphs 68 and 75 incorporate by reference all prior paragraphs of the amended complaint. Those prior paragraphs provide sufficient factual information to support the conclusion that the members of the enterprise functioned as a unit for the purpose of engaging in a course of fraudulent conduct. For example, it is alleged that the doctor defendants sold the use of their names and licenses to Mills so that Valley and Elite could be formed and it would appear, at least facially, that there was compliance with the New York State's prohibition on non-physicians from sharing ownership in medical service corporations thereby facilitating fraudulent no-fault billing; that Universal was the management company established to drain all the profits from Valley and Elite; and that Mills controlled Valley, Elite and Universal and, inter alia, directed the mailing of fraudulent billing to Allstate. (*See* AC ¶¶7-13, 26-45, Exs. B, C). The allegations of the amended complaint are sufficient to allege associations in fact. Accordingly, the motion to dismiss the fourth and fifth causes of action is denied.

### D. Conspiracy

The Second Circuit recently summarized the requirements of a RICO conspiracy as follows:

> To establish a RICO conspiracy, the [plaintiff] must prove that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity. However, in *Salinas v. United States*, 522 U.S. 52, 118 S. Ct. 469, 139 L. Ed.352 (1997), the Supreme Court made clear that to establish this pattern, the [plaintiff] need not prove that the defendant himself agreed that he would commit two or more predicate acts. *See id.* at 64, 118 S. Ct. 469 (noting that, although the RICO statute "broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove that each conspirator agreed that he would be the one to commit two predicate acts"). Indeed *Salinas* held that to be found guilty of a RICO conspiracy, a defendant need only know of, and agree to, the general criminal objective of a jointly undertaken scheme. *See id*. at 63, 118 S. Ct. 469; *see also Untied States v. Ciccone*, 312 F.3d 535, 542 (2d Cir. 2002) (stating that "a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts . . . to be found guilty of the racketeering conspiracy, for if suffices that he adopt the goal of furthering or facilitating the criminal endeavor.").
> It is well settled that a conspirator need not be fully informed about his co-conspirators specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside the scope of the illegal agreement. "A conspiracy may exist even if a conspirator does not agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Salinas*, 522 U.S. 63-64 . . . .

*United States v. Yannotti*, 541 F.3d 112, 121-22 (2d Cir. 2008).

Measured against the above standard, the allegations of conspiracy in the amended complaint are sufficient to withstand the motion to dismiss. It is alleged that the Defendants each agreed to participate in a conspiracy to commit the RICO violation by agreeing to conduct the

affairs of Valley (the sixth cause of action) and Elite (the seventh cause of action) by means of a pattern of racketeering activity, including numerous acts of mail and wire fraud. (AC ¶¶ 84, 89.) In addition there are factual details as to the roles of the various defendants alleged in the amended complaint. For example, Mills (1) paid the defendant doctors to pose as owners of Valley and/or Elite; (2) through the use of management agreements and leases drained all the profits from the two corporations; and (3) determined the type of medical services patients received.

The motion to dismiss the conspiracy claims is denied.

### E. Continuity

A "pattern of racketeering activity" requires "at least two predicate acts of racketeering activity" committed within a ten-year period. 18 U.S.C. § 1961(5). "To establish a pattern, a plaintiff must also make a showing that the predicate acts of racketeering activity by a defendant are 'related, and that they amount to or pose a threat of continued criminal activity.'" *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern-a series of related predicate acts extending over a substantial period of time-or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).

Defendants contend that the complaint appears to allege closed-end continuity and must be dismissed (1) because the alleged failure to specifically identify the individualized predicate acts precludes a determination of the sufficiency of continuity, and (2) with respect to Elite, the

15

length of the enterprise was less than two years. Plaintiffs retort that both open-ended and close-ended continuity has adequately been alleged. As the amended complaint's allegations are sufficient for close-ended continuity, the Court need not address the issue of open-ended continuity.

"A closed-ended pattern of racketeering activity involves predicate acts 'extending over a substantial period of time.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (quoting *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)). "Whether a closed-ended pattern of racketeering activity exists depends on a number of non-dispositive factors, including the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims and the presence of separate schemes. . . . Foremost among these factors is the duration of the racketeering activity. . . . To establish close-ended continuity, a plaintiff must show a series of related predicates extending over a substantial period of time. The relevant period is the time during which the RICO predicate acts occurred, not the time during which the underlying scheme operated or the underlying dispute took place." *Lichtenstein v. Reassure America Life Ins. Co.*, 2009 WL 792080, at *13 (E.D.N.Y. Mar. 23, 2009) (internal quotations and citations omitted). "Although continuity is 'primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists.'" *Satinwood*, 385 F.3d at 181 (quoting *DeFalco*, 244 F.3d at 321). These "factors are more significant in cases where the period of time over which the alleged racketeering acts borders on 'substantial.' Where the alleged racketeering acts span nearly three and one-half years, . . . the

16

presence or absence of the other factors is less critical." *Fresh Meadow Food Servs., LLC v. RB 175 Corp.*, 2008 WL 2566731, at *5 (2d Cir. June 24, 2008) (summary order).

Here, the Amended Complaint, alleges numerous predicate acts occurring over a sufficiently substantial period of time. In addition, Plaintiffs are not the only victims. The complaint alleges that Valley, Universal, and Mills, "enabled by the doctor defendants, . . . billed **insurers** for medical services when the services were not provided by medical doctors, for medically unnecessary and/or medically useless services and conducted other fraudulent billing." (AC ¶ 13 (emphasis added); *see also* AC ¶ 14 (when Plaintiffs "and other insurance companies refused to pay Valley's bills, Mills formed Elite in June 2001"). Other victims are alleged as well. *See id.* ¶ 30 (the stock and certificate of incorporation of Valley and Elite "were issued for the purpose of inducing the State and the Plaintiffs into believing that Valley and Elite were professional medical corporation formed in compliance with Business Corporation law § 1507 . . . .).[5]

Viewing the complaint in the light most favorable to Allstate and drawing all reasonable inferences in its favor, the Court finds that Allstate has sufficiently alleged a "closed period of repeated conduct" establishing a "pattern of racketeering activity." *See First Interreg'l Advisors Corp. v. Wolff*, 956 F. Supp. 480, 486 (S.D.N.Y. 1997) (closed-ended continuity established by allegations of a scheme that defrauded not one but several lenders with numerous predicate acts that occurred over a period of almost fourteen months).

---

[5] A fair reading of the amended complaint and its allegations as to the Defendants' use of unwarranted or medically unreliable testing also lead to the conclusion that the patients who were subjected to unwarranted and unreliable testing were victims as well.

F.   **Predicate Acts**

Defendants' arguments to the contrary notwithstanding, the amended complaint sufficiently alleges the predicate acts with the specificity required by Federal Rule of Civil Procedure 9(b). Exhibits B and C contain specifics such as the patient involved, the dates of the bills and when they were mailed to Plaintiffs, as well as the nature of the misrepresentations contained therein.

## III. The Common Law Fraud Cause of Action

"A cause of action for fraud may arise when one misrepresents a material fact, knowing it is false, which another relies on to its injury." *Graubard Mollen Dannett & Horowitz v. Moskovitz*, 86 N.Y.2d 112, 122 (1995); *see Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119 (1969). Defendants seek dismissal of the fraud claim on the basis that Allstate cannot claim that its reliance in making the payments was reasonable in view of the fact that Allstate already had taken the position that Valley was improperly structured in 1999 and its "verification powers as a sophisticated insurer" prevent it from asserting that it could reasonably rely on Elite's submissions. (Defs. Mem. at 21-22.) However, as Allstate points out, it was not until the New York Court of Appeals decision in *State Farm Mutual Automobile Insurance Company v. Mallela*, 4 N.Y.3d 313 (2005), that it was established that an insurer could inquire into a provider's fraudulent incorporation and management and refuse to pay on said basis.

Moreover, Defendants' view of the alleged fraud is too limited. It is clear from the amended complaint that the alleged fraud is not only the "improper structuring" but included billing chiropractor or lay person services as though they were medical services, providing unwarranted or medically unreliable testing, using inappropriate and misleading billing codes,

billing for unproven and therapeutic services, upcoded and unbundled services, and billing for services which were not performed. As to these claims, the argument that Allstate could not reasonably rely because it had the ability to verify the claims under the no-fault statute is, as noted earlier, a reassertion of Defendants' Insurance Law § 5106 and no-fault 30-day rule argument. For the reasons set forth in the Court's decision of March 31, 2008, § 5106 and the 30-day rule do not preclude Allstate's cause of action for fraud.

Finally, Defendants' reliance on *Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris*, 113 F. Supp. 2d 345 (E.D.N.Y. 2000) is misplaced as it decided a motion for summary judgment and not a motion to dismiss. The issue of reasonable reliance in more appropriately decided on a motion for summary judgment rather than a motion to dismiss. *See AIU Insur. Co. v Olmecs Med. Supply, Inc.*, 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005).

The motion to dismiss the common law fraud cause of action is denied.

## Conclusion

For the reason set forth above, Defendants' motion to dismiss is denied.

Dated: Central Islip, New York
September 30, 2009

/s/
Denis R. Hurley
Senior District Judge